Jean E. Faure (jfaure@faureholden.com)
Jason T. Holden (jholden@faureholden.com)
Faure Holden Attorneys at Law, P.C.
1314 Central Avenue
P.O. Box 2466
Great Falls, MT 59403
Phone: (406) 452-6500
Fax: (406) 452-6503
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| CALUMET MONTANA REFINING, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW R. WHEELER, in his official capacity as the Administrator of the United States Environmental Protection Agency. <br><br> Defendant. | Civil Action No._____ <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF** |

Plaintiff Calumet Montana Refining, LLC ("Calumet") brings this action against EPA Administrator Andrew R. Wheeler (Wheeler) to enjoin enforcement of the Renewable Fuel Standard program with respect to its Great Falls, Montana refinery. Plaintiff alleges the following facts and claim for relief:

### PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Calumet Montana Refining, LLC, owns a petroleum refinery in Great Falls, Montana.

2. Defendant Andrew R. Wheeler is the Administrator of the United States Environmental Protection Agency ("EPA").

3. EPA is an agency of the federal government located in Washington, D.C.

4. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 2201. Declaratory and injunctive relief is sought as authorized in 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1). Defendant is a United States officer sued in his official capacity. Venue is proper under § 1391(e)(1)(C) because Plaintiff resides in this district and no real property is involved in the action. Plaintiff is a resident of Great Falls, Montana. Venue is also proper under § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred here and the refinery that is the subject of the action is situated here.

## BACKGROUND

### The Renewable Fuel Standard Program

6. Congress created the Renewable Fuel Standard ("RFS") Program—codified at Clean Air Act Section 211(o), 42 U.S.C. § 7545(o)—as part of the Energy Policy Act of 2005. Pub. L. No. 109-58, § 1501(a), 119 Stat. 594, 1067-74 (2005). The RFS Program requires renewable fuels, such as ethanol and biodiesel, to be blended into petroleum-based transportation fuels (gasoline and diesel) sold in the United States. Congress set annual volumes for nationwide renewable fuel use from 2006 through

2012. *Id.* at 1069. In the Energy Independence and Security Act of 2007, Congress increased the annual renewable fuel volume requirements and extended the RFS Program through 2022. Pub. L. No. 110-140, § 202, 121 Stat. 1492, 1521-28 (2007).

7. "Obligated parties" are responsible for ensuring that the volume targets are met each year. 42 U.S. C. § 7545(o)(3)(B)(ii)(I); 40 C.F.R. §§ 80.1406, 80.1407. An obligated party must meet its Renewable Volume Obligation ("RVO") each year. 40 C.F.R. § 80.1406(b). To calculate its RVO, an obligated party multiplies EPA's volume percentage for the year by the volume of transportation fuel the company produced or imported. The statute defines "obligated parties" as "refineries, blenders, distributors, and importers," *see* 42 U.S.C. §§ 7545(o)(2)(A)(iii)(I), (o)(3)(B)(ii)(I), but EPA has imposed compliance obligations exclusively on refiners and importers, *see* 40 C.F.R. § 80.1406(a)(1). "Refiners" produce petroleum-based fuels and other products from crude oil, whereas "blenders" blend renewable fuel into petroleum-based fuels to create the gasoline and diesel products actually sold to consumers.

### Renewable Identification Numbers (RINs)

8. Obligated parties demonstrate their compliance by securing blending credits called Renewable Identification Numbers ("RINs"). *Id.* § 80.1427. A RIN is created when a renewable fuel producer manufactures renewable fuel—ethanol, for example. *Id.* § 80.1426. Until the renewable fuel is blended into petroleum-based

transportation fuel, the RIN remains attached to the physical volume of renewable fuel. *Id*. § 80.1428. The RIN is "separated" when the renewable fuel is blended with transportation fuel. *Id.* § 80.1429. Obligated parties use separated RINs to demonstrate RFS compliance. *Id*. § 80.1427.

9. Obligated parties that do not separate enough RINs to meet their RVOs must buy the RINs in the secondary market. Under the trading system established by EPA, RINs can be traded on a spot market or bought and sold through private contracts. 75 Fed. Reg. 14,670, 14,722 (Mar. 26, 2010). Since the development of the RFS Program, RIN prices have skyrocketed.

10. The marketplace for RINs is necessary because "[m]any obligated parties"—particularly small refineries—"do not have access to renewable fuels or the ability to blend them, and so must use credits to comply." 72 Fed. Reg. 23,900, 23,904 (May 1, 2007).

**The Small Refinery Exemption**

11. When Congress created the RFS Program, it recognized that small refineries like Calumet would face disproportionate economic impacts from the new compliance obligations due to the competitive distortion in favor of blending refineries and exempt (non-refining) blenders. Building facilities for blending renewable fuels into petroleum products is capital-intensive and may not be feasible for small refineries, meaning they are forced to purchase RINs from larger refiners

or non-obligated parties that operate blending facilities. Small refineries often sell to limited geographic markets, where acceptance of renewable fuel blends is low. Unlike large, vertically-integrated refiners that can transport their fuels to different markets, small refineries may be forced to limit the extent to which they blend renewable fuels to match what their local markets will accept. As a result, many small refineries are heavily reliant on purchasing RINs to comply with the RFS Program. And if the market price for RINs exceeds the cost of purchasing and blending renewable fuels, compliance with the RFS Program advantages large refineries and disadvantages non-blending small refineries.

12. Congress did not intend to place small refineries at a permanent competitive disadvantage relative to large refineries, so Congress allowed small refineries to petition EPA for an extension of the statutory exemption from RFS compliance "for the reason of disproportionate economic hardship." 42 U.S.C. § 7545(o)(9)(B)(i). Congress directed EPA, "in consultation with the Secretary of Energy," to consider the findings of the DOE Study and "other economic factors" when evaluating small refinery hardship petitions. *Id.* § 7545(o)(9)(B)(ii).

13. The Department of Energy, in a 2011 report for Congress, explained that small refineries would be significantly harmed when the RFS volume obligations increase and the price of RINs increases. RINs are now trading at near record highs.

### Calumet's Hardship Petition to EPA

14. Calumet owns a petroleum refinery in Great Falls, Montana.

15. Calumet is an "obligated party" under the RFS Program. 40 C.F.R. § 80.1106(a)(1). As an obligated party, Calumet is required to blend renewable fuel with the transportation fuel it produces or buy RINs from other parties that have blended renewable fuel with transportation fuel.

16. Calumet's refinery is a "small refinery" under the RFS Program. 40 C.F.R. § 80.1141(g).

17. Calumet is unable to sell enough blended fuels to meet its RFS obligations, and it faces increasing compliance costs driven by the high price of RINs.

18. Small refineries may petition EPA at any time for relief from RFS compliance based on disproportionate economic hardship. 40 C.F.R. § 80.1441(e)(1).

19. Calumet submitted an application for small refinery hardship relief for the 2019 compliance year on November 1, 2019.

20. Calumet submitted a petition for small refinery hardship relief for the 2020 compliance year on December 18, 2020.

21. EPA has not yet acted on Calumet's petitions for hardship relief for the 2019 and 2020 RFS compliance years.

### EPA's Ongoing and Unlawful Delay and the Harm to Calumet

22. Under the Clean Air Act, EPA must act on Calumet's petition within 90 days

of receipt. 42 U.S.C. § 7545(o)(9)(B)(iii); 40 C.F.R. § 80.1141 (e)(2) ("The Administrator shall act on such a petition not later than 90 days after the date of receipt of the petition."). Thus, EPA is in violation of the Clean Air Act.

23. The current RFS compliance deadline of March 31, 2021, is fast approaching. On January 15, 2021, EPA announced a proposed rule to extend the compliance deadline for RFS compliance for both the 2019 and 2020 compliance years. 86 Fed. Reg. 3928, 3929 (Jan. 15, 2021). The proposed rule sets forth a 2019 RFS compliance deadline of November 30, 2021 and a 2020 RFS compliance deadline of January 31, 2022. *Id*. However, this notice of proposed rulemaking is neither final nor guaranteed to become final at any set point in time.

24. By its failure to timely grant Calumet's small refinery hardship petitions for the 2019 and 2020 compliance years, EPA could force Calumet to be in violation of the law for failure to comply with the RFS Program if this Court does not enjoin enforcement.

25. This Court has the equitable power to enjoin enforcement of agency action.

## FIRST CAUSE OF ACTION
### (Equitable relief for unlawful agency action)

26. This Court may use its equitable powers to enjoin violations of law by federal agencies when a party is irreparably injured and other legal remedies are inadequate. *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110–11 (1902). "The

Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citations omitted).

27.     EPA is already in violation of federal law because it has not issued a decision on Calumet's petition for hardship relief within 90 days of receipt.

28.     As described above, Calumet will be irreparably injured if this Court does not enjoin EPA from enforcing the RFS against Calumet for the 2019 and 2020 compliance years.

29.     Other legal remedies are inadequate as there is no relevant final agency action to challenge.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court enjoin EPA from requiring Calumet to comply with the RFS obligations for the 2019 and 2020 compliance years until such time that EPA has granted Calumet's petitions for small refinery hardship relief.

Dated this 19th day of January, 2020.

                      BY:   /s/ Jean E. Faure
                              Jean E. Faure
                              FAURE HOLDEN ATTORNEYS AT LAW, P.C.
                              Attorneys for Plaintiff